No. 93, Misc. HOMMA *v.* PATTERSON, SECRETARY OF WAR, ET AL.; and

No. 818. HOMMA *v.* STYER, COMMANDING GENERAL, ET AL.

February 11, 1946. The motion for leave to file petition for writ of habeas corpus and writ of prohibition is denied and the petition for writ of certiorari is also denied on authority of *In re Yamashita,* 327 U. S. 1. *Captain George W. Ott* for petitioner. *Solicitor General McGrath* for respondents.

MR. JUSTICE MURPHY, dissenting.

This case, like *In re Yamashita,* 327 U. S. 1, poses a problem that cannot be lightly brushed aside or given momentary consideration. It involves something more than the guilt of a fallen enemy commander under the law of war or the jurisdiction of a military commission. This nation's very honor, as well as its hopes for the future, is at stake. Either we conduct such a trial as this in the noble spirit and atmosphere of our Constitution or we abandon all pretense to justice, let the ages slip away and descend to the level of revengeful blood purges. Apparently the die has been cast in favor of the latter course. But I, for one, shall have no part in it, not even through silent acquiescence.

Petitioner, a civilian for the past three and a half years, was the victorious commander of the 14th Army of the

Imperial Japanese Army in the Philippines from December 12, 1941, to August 5, 1942. It may well be that the evidence of his guilt under the law of war is more direct and clear than in the case of General Yamashita, though this could be determined only by an examination of the evidence such as we have had no opportunity to make. But neither clearer proof of guilt nor the acts of atrocity of the Japanese troops could excuse the undue haste with which the trial was conducted or the promulgation of a directive containing such obviously unconstitutional provisions as those approving the use of coerced confessions or evidence and findings of prior mass trials. To try the petitioner in a setting of reason and calm, to issue and use constitutional directives and to obey the dictates of a fair trial are not impossible tasks. Hasty, revengeful action is not the American way. All those who act by virtue of the authority of the United States are bound to respect the principles of justice codified in our Constitution. Those principles, which were established after so many centuries of struggle, can scarcely be dismissed as narrow artificialities or arbitrary technicalities. They are the very life blood of our civilization.

Today the lives of Yamashita and Homma, leaders of enemy forces vanquished in the field of battle, are taken without regard to due process of law. There will be few to protest. But tomorrow the precedent here established can be turned against others. A procession of judicial lynchings without due process of law may now follow. No one can foresee the end of this failure of objective thinking and of adherence to our high hopes of a new world. The time for effective vigilance and protest, however, is when the abandonment of legal procedure is first attempted. A nation must not perish because, in the natural frenzy of

the aftermath of war, it abandoned its central theme of the dignity of the human personality and due process of law.

Mr. Justice Rutledge agrees with these views.

Mr. Justice Rutledge, dissenting.

I dissent upon the grounds stated in the dissenting opinions in the *Yamashita* case, 327 U. S. 1, 26, 41, all of which are exemplified in these applications, and for additional reasons presented by them.

For the first time the Court, by its denial of the applications with the effect of sustaining the commission's jurisdiction, permits trial for a capital offense under a binding procedure which allows forced confessions to be received in evidence;[1] makes proof in prior trials of groups for mass offenses *"prima facie* evidence that the accused likewise is guilty of that offense";[2] and requires that the findings and judgment in such a mass trial "be given full faith and credit" in any subsequent trial of an individual

---

[1] The directive or order prescribing the regulations governing the trial was issued December 5, 1945, and provided in Paragraph 5d *Evidence* (7): "All purported confessions or statements of the accused shall be admissible without prior proof that they were voluntarily given, it being for the commission to determine *only* the truth or falsity of such confessions or statements." (Emphasis added.) In addition to the further provisions set forth in notes 2 and 3, the order provided for the reception of hearsay and documentary evidence in even broader terms, if possible, than the directive relating to similar matters which covered General Yamashita's trial.

[2] Paragraph 5d *Evidence* also contained the following subdivision (4): "If the accused is charged with an offense involving concerted criminal action upon the part of a military or naval unit, or any group or organization, evidence which has been given previously at a trial resulting in the conviction of any other member of that unit, group or organization, relative to that concerted offense, may be received as *prima facie* evidence that the accused likewise is guilty of that offense."

762

person charged as a member of the group.[3]    These provisions of the directive ordering the creation of the commission in my judgment vitiate the entire proceeding.

Moreover the time allowed for preparation of the defense was cut from the three weeks given to Yamashita to fifteen days between arraignment and the beginning of trial.    Motions at arraignment for 30 days to prepare defense before the trial began and on the opening day of trial for a ten-day continuance, the latter supported by counsel's affidavit of insufficient time, were denied.[4]

[3] Paragraph 5d *Evidence* (5) is as follows: "The findings and judgment of a commission in any trial of a unit, group, or organization with respect to the criminal character, purpose or activities thereof shall be given full faith and credit in any subsequent trial, by that or any other commission, of an individual person charged with criminal responsibility through membership in that unit, group or organization. Upon proof of membership in that unit, group or organization convicted by a commission, the burden shall be on the accused to establish by proof any mitigating circumstances relating to his membership or participation therein."

[4] The following is a bare chronological statement concerning the constitution of the commission and subsequent events: On December 5, 1945, the regulations governing the trial were issued; December 6, the order to General Styer to appoint the commission followed; on December 12, petitioner was transferred from Japan to Manila; December 15, counsel for the defense was appointed; December 17, the charge was served on petitioner, substantially identical with that in the *Yamashita* case, containing 47 specifications of the same general type there involved, together with a supplemental charge that on May 6, 1942, petitioner refused to grant quarter to the armed forces of the United States and its allies in Manila Bay, Philippines; December 19, the commission convened, counsel were sworn, petitioner was arraigned, pleaded not guilty and entered a motion for thirty days time to prepare defense before trial.   The motion was denied.

On January 3, 1946, the commission reconvened.   The prosecution then filed a bill of particulars to two of the specifications.   Petitioner's plea to the jurisdiction, motion to dismiss, motions for bills of particulars relating to certain items in the specifications, and for further particulars concerning other items were denied.   The commission also then denied the motion of counsel for the defense to postpone the

Other serious questions, affecting the validity and fairness of the commission's constitution are presented which were not raised in the *Yamashita* petitions.

I think the motion and petition respectively should be granted and determined on the merits.

MR. JUSTICE MURPHY joins in this opinion.

---

trial for ten days. This motion was supported by affidavit of chief counsel, dated January 2, 1946, which set forth that he and his associates began work on preparing the defense on December 16; that "each of the forty-eight specifications requires a detailed investigation and that eighteen days have proved insufficient time to accomplish even a small portion of this investigation"; that two members of the defense staff who had left for Tokyo on December 25 to interview witnesses and secure other evidence had not returned; that two of three investigators originally assigned to the defense were ill and in the hospital, one from December 21, the other from December 24, and that only one additional investigator had been assigned to the defense, though others had been promised; that on January 2 the defense had received from the prosecution eleven "typical cases" on which proof was to be offered under specification 4 and nine "representative instances" under specification 47, which the defense had had no opportunity to investigate. The affidavit concluded with the statement that a minimum period of ten days was required before counsel could be prepared to proceed with the trial.

The trial began in the afternoon of January 3. On January 16 petitions for writs of habeas corpus and prohibition were filed in the Supreme Court of the Philippines. They were denied January 23 without argument. The petitions and motions constituting this application were filed in this Court February 7, 1946.